Good morning, Your Honor. This is David Woodward with the law firm, Heinz Mills, in Austin. It's a personal pleasure and an honor to appear before you today. Glad to have you here. Each side will have ten minutes. And see if you say that after. I will repeat it, Your Honor, I'm sure. I want to introduce my co-counsel as well, Jason Hartley from San Diego. These cases, Your Honor, are parodying consumer fraud, false advertising cases. As plaintiffs allege in each of these four consolidated appeals, the defendants advertised a true credit score, one that's used by lenders in determining consumers' creditworthiness, but in fact sold exactly the opposite. So for me, the central issue in this case is appellate jurisdiction, whether you're appropriately in front of us. Yes, Your Honor, I'm happy to address the jurisdiction. Okay. So let me just start off and see if I can work you through this. In general, this Court said a whole bunch of times, most recently about a week ago in Medivac, that orders staying in action to compel arbitration are not appealable. Correct? That's right, Your Honor. Okay. And I've read Medivac's argument. And you say you get around – I'm not sure what you're saying. That's why I'm asking. You say you get around that because this is a final order because it is a death knell. That's your argument? Because it is a what? I'm sorry. Because it is a death knell? Well, in effect, Your Honor, you're basically at order 1291. Right, because the amount of controversy is so low that nobody will pursue their arbitration and, therefore, as an economic matter, this ends the case. That's your argument. That's one of them, Your Honor. Right. Well – What is your argument? Tell us why you have jurisdiction. Right. Well, I agree with you, Your Honor, in terms of the FAA saying that a court has appellate jurisdiction over a final order. Right. So you're saying this is a final order because it is a death knell. Yes, that's correct, Your Honor, in terms of the effect of the out-of-court. I thought death knell meant something much more limited. It didn't mean that it was impractical to litigate. It meant it was impossible. For example, if federal jurisdiction was going to be illusory because the state court would decide the case and render a final judgment, it would be binding on the federal court. Well, Your Honor, I would phrase it not in terms of the death knell. Our phrasing would be effectively out-of-court. Okay, but the effectively out-of-court doctrine only applies to federal claims, doesn't it? Can you cite me any case where the effectively out-of-court doctrine has been applied to state law claims? Your Honor, I think that the case law is a general case law. Well, as I read the cases, the reason that we have an effectively out-of-court doctrine is it in effect deprives the federal court of jurisdiction over things that it would have had, that Congress gave it jurisdiction over in statutes. Again, I ask, do you think the effectively out-of-law doctrine applies to state law claims? Yes, I do, Your Honor. And what case do you cite for that proposition? Well, one case, in fact, that the defendant cited in their brief, the Iskanian v. CLS Transportation, Los Angeles case, which was decided in June of 2012. And in that case, it said that an order of compelling arbitration ordinarily is not appealable, but the order here dismissed the class claims, and therefore, it is appealable. The concept of effectively out-of-court. Were the class claims state law claims in that? I believe they were, Your Honor. I would have to go back and double-check, and I will do that. Didn't the federal court just send the thing to arbitration? The arbitration agreement seems to say no class claims, so the arbitrator will probably say no class claims. But I don't recall, did the federal judge say you can't arbitrate any class claims? Well, yes. The court rejected our argument that the plaintiffs cannot effectively vindicate their statutory rights. No, but that's not the question. Because, in part because the arbitrator. And frankly, my difficulty with your case is this dicta in the Supreme Court decision in Greentree. In Greentree, the Supreme Court held that a district court's order directing arbitration and dismissing the federal proceedings was appealable as a final decision. And then they said, quote, had the district court entered a stay instead of dismissal in this case, the order would not be appealable. That's what the district court did here. It stayed federal court proceedings. And as I understand it, it stayed federal court proceedings without deciding anything and directed arbitration. And it looks like under a plain reading of the statute and under an application of this dictum in Greentree, that's it. Well, Your Honor, I'm familiar with the footnote, the dicta in Greentree. And it does say exactly what you just indicated. But in Greentree, Greentree held and we cite Greentree repeatedly in favor of our concept of effective vindication of rights as being possible to show that high arbitration costs prevent you from going forward. In Greentree, the footnote says what you just indicated, Your Honor. But at the same time, there was no demonstration in Greentree factually that the plaintiffs could not proceed in arbitration. You're not saying the federal court said you can't do an arbitration for class. You're saying that since we can't, Greentree should be distinguished. Oh, Greentree is distinguished. So you're arguing, I'm sorry. You've also got to distinguish Deese versus Billy and the. Yes, and it's exactly the same distinction, Your Honor. In neither Deese versus Billy nor Greentree did the plaintiffs actually make the factual showing of record that they were foreclosed from vindicating their statutory rights because of prohibitive costs. We have here as a matter of record. The other distinction is that in Deese versus Billy and also in Greentree, there was no discussion of the additional three bases for appellate jurisdiction that we assert here. We are certainly asserting the effective, I'm sorry, the effectively out of court. The effect, you have to, Medivaz, you mentioned, Your Honor. Medivaz, I read as saying that. So you're saying distinguish. I'm sorry, I interrupted. That's all right. I'll interrupt you after you finish. So I think I understand it now. You're saying distinguish Greentree and Deese because in our case, no class arbitration will be possible, and therefore we can't vindicate our rights as a practical matter. That's true as to all of the claims of the punitive class, and it's also true of the individual claims here, Your Honor. I was trying to find out what the argument was. Okay. So now let's go back to that. Sure. Your argument is not that the district judge told you you couldn't have a class action. The district judge said. He did effectively, Your Honor. Well, no, I know. But the district judge didn't say you can't have a class action. The district judge said you've got a contract here that requires arbitration. I'm going to send this to arbitration. You can make that argument to the arbitrator. In effect, you'll lose because your contract says you can't. But the district judge didn't say no class action here. The district judge said all these issues are for the arbitrator. Your Honor, under Medivac, I'm glad you raised that case because I read Medivac to stand for the concept that you need to look at all the circumstances surrounding an order to determine what its effect was. And we are saying that the effect of this order is a complete foreclosure of access to any forum, either arbitration or in court, under the factual showing that was made. And that's because of your argument that the claims are not big enough to pursue individually, right? Yes, that's correct. Because had they been, were they $100,000 claims, you wouldn't be making this argument. The size of the claim in relationship to the high arbitration costs, and we are relying upon specifically Italian Colors Restaurant, the American Express versus Italian Colors Restaurant, that came after Concepcion. Italian Colors, as you know, rejected the effective indication of statutory rights argument as a defense to arbitration in that case because the plaintiffs were saying the costs of proving our claim are prohibitive. We are not saying that here, Your Honor. Okay. So what are you saying? Justice Scalia, we are going under the facts. Don't say Justice Scalia to me. Tell me what you're saying. Majority opinion in Italian Colors. Okay. But what are you saying? Recognize that there is an exception, the effective indication applies, where you can make a factual showing that the cost of arbitration alone, make resort to the arbitration form impracticable. We have made that showing, and that is the controlling principle here, and there's no evidence to the contrary. You have a number of arguments about why this arbitration agreement is unconscionable, if I understand it. Is that right? Yes, that's right. Can't you present those to the arbitrator? Well, those decisions, we could present them to the arbitrator if we could reach the arbitrator, but we can't get to the arbitrator, Your Honor. That's the whole point. We have no access to the arbitration form. Well, he's assigned it. He's referred it to arbitration. Isn't the next step arbitration? Right. And our point, Your Honor, is that getting to arbitration, we can't get access to arbitration because of the fact that the prerogative costs of filing are related to arbitration. No, I mean, you – if the next step is arbitration, you present to the arbitrator all your reasons for why this is an invalid contract. We can't do it. We can't. Why can't you do it? We can't go to the arbitrator because – Why can't you tell the same story to the arbitrator that you would tell to the judge? You're in front of the district judge, and you want to say to the judge, Judge, I know this contract says we proceed case by case, but it's unconscionable. And the judge would hear your reasons why and make a determination. Judge Silverman's asking, why can't you go to the arbitrator and make that argument in any case? If the arbitrator says, yes, this is an unconscionable contract, you come back to court, and you enforce the arbitration award, and you proceed in court. Because, Your Honor, again, let me try to – No, well, tell me why that costs so much. Let's assume I appoint Judge Silverman as the arbitrator. Yes. And I say, make your argument to Judge Silverman. Okay. And you make it. Okay. Why is that so costly? Well, the reason it's costly is because we have record evidence as to what the costs of arbitration are in this case. If you go through the – But I – you're still not answering my question. It's more costly to tell your story of unconscionability to the arbitrator than it is to tell it to Judge Silverman. Oh, it is more expensive to go to the arbitrator, actually, in this case, under the rules of the American Arbitration Association. I think you're saying it's because you have to pay the arbitrators. Yes. And you don't have to pay the judges. Our claims, Your Honor. There's a lot of evidence that you have to pay the arbitrators. All you had was – you're saying typically under the American Arbitration Association rules, you do. Now, just looking at the rules isn't evidence. The arbitrations I did in practice – let's see. One, the arbitrators didn't charge. It was a law-related thing. They volunteered their time. And one, the parties were of comparable economic status and agreed to split the fees. And two or three of them were uninsured motorist arbitration and the insurance company took up all the fees. And we generally proceeded under A.A. rules in all of them. Well, under – I don't understand why we should just assume that you're going to be stuck for thousands of dollars for basically retired judges in California. Because that's what the record evidence is in this case, Your Honor. I didn't see record evidence. I just saw an assumption. Where's the record evidence? Oh, the record evidence would be in numerous affidavits of the plaintiff-consumers. The record evidence would be in the affidavit. Can you just give me an excerpts of records page? Oh, sure, Your Honor. I can do that. I don't know if it gets anywhere under this Italian Colors case and Coopers and Librand v. Liberty and Medivac case, but I'd still like to see it. Your Honor, the excerpts of record with respect to the cost of arbitration would be in excerpts of record 264-65 and also excerpts of record 295. Both of those – Thanks. Sure. Both of those would be the expert declarations of Sharon Arkin and Maxwell Bleacher. And we also have a declaration of Irene Kovarik with the fees involved for the arbitration forums. And each of – not each of – several of the consumer declarations would speak to the arbitration forum. Thanks. I just want to be able to comment on that. Yes. And again, I'm going to – I know I'm imposing on my colleague's patience here, but I want to understand again. So your argument is that it would be prohibitively expensive even to argue the issue of unconscionability to an arbitrator. That's right, Your Honor. Okay. You have to be able to access the forum. That's your argument. And, Your Honor, I would just submit on the injurisdiction that I didn't have the opportunity, but we have limited time. But the additional bases for appellate jurisdiction here are under the collateral order doctrine. All three of the elements, the criteria under collateral order – Well, that's what I tried to ask you first, and you kept running away from it. The collateral order doctrine here would be that this is, in effect, kills your action. Effectively out of court is one argument, Your Honor. Satisfaction of the three criteria under the collateral order doctrine is another basis for appellate jurisdiction. And Mandamma's jurisdiction under the Bauman factors, under the five factors of Bauman, is a third basis for appellate jurisdiction. Gotcha. All of which are covered. Thank you so much.  Mr. Kutter. Good morning, Your Honor. This is Mayor Fetter for ConsumerInfo.com. I think I should start by saying that probably the – there are several responses to the arguments on jurisdiction. I think the most direct one is the one that Judge Horwitz cited. which is that everything you've heard is basically a death knell argument, which is distinct from the types of arguments that fit within – Does the death knell type of argument survive the amendment of 16? Well, first of all, I think that it didn't work even before 16, because like if you looked at a case like Cooper's and Librand, which isn't even dealing with arbitration, Cooper's and Librand says you can't get appellate jurisdiction on a death knell basis, because that was the argument there, and it was rejected. So what final orders are appealable after the amendment of 16? Well, our position, based on the Moglia case in the Seventh Circuit, is that the final orders that are appealable are an order that actually dismisses the district court litigation, and that Section 16 basically says if you have an order staying pending – No, just don't tell me which ones are appealable. I want to know what fits within final orders. Right. Final orders, your view is that if the district judge had said I dismiss this action, go to arbitration, that would be appealable? Yes. If the district judge was confirming an arbitration award, that would be appealable? Once the court entered judgment, yes. What else is appealable under the final orders part of Rule 16? I don't believe anything else is, Your Honor. And granted, that is giving finality a different meaning in Section 16 than in 1291. Correct. Okay. Now, why does 16 then refer to 1291? 16 says orders that are appealable are final orders under 1291 and then B and C, right? Roughly. Well, 16 says that a final order – I think it says a final order dismissing an arbitration is appealable, and an interlocutory order staying or – Well, doesn't 16 also say – and I'll pull it up here, but I'm pretty sure about this – doesn't 16A cross-refer to 1291?  Yeah, I apologize, Your Honor. I am turning back to that. Well, assume it does for the moment. I'll find it and I'll read it to you. Yeah, but it's basically – So why don't we interpret 16A coextensively with 1291? And I think for two reasons, or related reasons, one of which is the reasons given by the Seventh Circuit by Judge Easterbrook and Moglia, and related to that, I think the whole purpose of 16B would be defeated if you could – Okay. Now I'm sorry. I apologize. 16A has a list of A through E of those things that are appealable, right? Yes. And your view is that those are the only things that are appealable under 16A. Right. And now that I'm looking at it, it doesn't say anything under 1291. Right. It says a final decision. So, I mean, I've turned your argument around and I apologize. So your argument is that we don't refer to 1291. We simply refer to the list of things under 16A1. Right. And the – or under 16A, which A3 is final decision. Right. And then we go back to B, which says except is otherwise provided under section 1292B. Right. And – Only discretionary appeals of – Those that are certified. Right. Okay. So your argument – and I apologize. I was making your opponent's – I was rolling through your opponent's argument for you. Yeah. But your argument is that this statute in the arbitration context limits direct appeals to the stuff that's under – that's expressly mentioned under A1. Yeah. Correct. And – but I should emphasize that's just a threshold argument that the Court, despite it being a threshold argument, the Court doesn't need to reach it because even if you wanted to go and look at the various 1291 exceptions that the plaintiffs are relying on here, effectively out of court, collateral order, mandamus, those don't apply by their own terms. Okay. So – but now let me go back to your argument. Yeah. If A13 says a final decision with respect to an arbitration is appealable, what – and I assume that that doesn't include things under A1, A through E. What does 3 include? 3 includes a final decision which would be either an order dismissing a case and sending it to court, which is not the usual course, or an order confirming – Confirming is mentioned under A1D. Well, I – Right? So there wouldn't be any reason to include it under 3. Fair enough. But I guess what I would say is anything that produces a final judgment from the district court as opposed to an interlocking – But I'm trying to figure out in the statutory scheme what produces a final judgment, in your view, that's not listed in A1. What produces a final judgment is an order dismissing the case because it's being ordered to arbitration, which – They say it would cost to arbitrate in case that they filed an affidavit or so forth. Right. And, yes, Your Honor, let me – Help me with something. Well, let me get the answer to my question, if I may. Sure. And, yeah. Let me jump quickly to that. There are two quick responses to that. I'll jump to the factual one first, which is if you look at – Wait a second. This question is critical for me, too. The answer is critical for you, too? Yes. If you look at what they're showing is, and maybe the best place to see it is – or the most recent is in their supplemental brief in response to the American Express versus Italian Colors case. They say the costs that are prohibitive to them are the AAA would charge a consumer up to $125. That's the prohibitive cost. Now, they haven't made a showing as to what the cost is of filing in court, but it's cheaper than filing in court. Well, hold on. I'm not asking for argument. I was interested in the same thing that Judge Silverman was. Yes. I think you may have answered it, but I'm not sure. Yes. I asked your adversary for his excerpts references, and I checked them, and the best I could find was the reference that he gave me at page 265 of the excerpts. Correct. That under the American Arbitration Association arbitration policies for consumer claims less than or equal to $10,000, the consumer is responsible for one-half the arbitrator's fees up to a maximum of $125. Correct. Is there any other evidence of the dollar amount in the excerpts of record? Well, there is a parallel number for JAMS arbitration that's also, I think, on the same page. But other than that, no. And, of course, there is. I'm looking. Oh, $250, I see. Right. So if it's JAMS, it's $250. Right. So what we're talking about here is $125 or $250, depending on which way they do it? Yeah, based on what's been shown here. And that's going to be the consumer could initiate either one, of course. Okay. So the answer to Judge Silverman's question is $125 or, at most, $250? Yeah, that's the argument. Is that it? Yes, that's the argument. Do we need more argument than that, or is that it? I don't think so. Does the doctrine apply at all, the effectively out-of-court doctrine, to state law claims? You know, I can't say I've researched that question, I have to confess. I think it would apply to state law claims because I think it's a gloss on finality under 1291. But I'm not going to bet my house on it because, as I say, I haven't looked at that angle. It would just stand to reason to me. We don't have the bet your house option. And, yes, fortunately, and you'd need my wife to cosign any of that. But the other thing to say, though, is effectively out-of-court, if you look to the Moses H. Cohn case, where it's coming from, that case specifically distinguishes effectively out-of-court from this sort of death knell argument that is being made here by saying, you know, what's the difference between a case where the plaintiff may choose not to proceed because of whatever his incentives are and one where the district court refuses to allow further proceedings? Here, all we're talking about, best case for plaintiffs, is that they're saying they will choose not to proceed because they think it's too expensive. Could I get you back to the $125? Yes. Is the rule that the arbitrator or arbitrators may allocate that cost to the loser so that if the plaintiff's claim is well-founded, the arbitrators can give them every penny and make the loser pay all the costs of arbitration? No. I've tried to find an answer to that question. It is not in the record. And the arbitration agreement here is completely silent on it, which is basically the same as was true in Greentree, where the Supreme Court says silence, complete silence is not enough for a plaintiff to make his case. And I think that the Kilgore decision from this court recently, they had the same point about the mere risk of higher costs is not going to be enough. Here, maybe you're suggesting that even the $125 might not have to be paid. I don't know the answer to that. But certainly, even if it's $125, that's less than it costs to file in federal court. But it may be a taxable cost in federal court so that the loser pays. Fair enough, Your Honor. So I'm looking now, and I'm looking at the Ferguson case that Judge Clifton's opinion last year. Yes. And he rather clearly says the effective vindication exception does not extend to state statutes. Yes. The effective vindication exception very clearly does not. Okay. The effectively out-of-court exception. And that's why I want to be clear about the two. The effectively out-of-court exception is really a death knell argument, is it not? No. Okay. Tell me why it's not. Because the effectively, and just to make sure our terms are straight between effective vindication and effectively out-of-court. Effective vindication is the doctrine of whether an arbitration agreement is enforceable. Right. Effectively out-of-court is the appellate jurisdiction doctrine. Effectively out-of-court is, in fact, this Court said in the Bagdasarian case, it's basically limited to cases where, although there's no formal judgment, the parallel. You're done. You're done with that. Right. The parallel proceeding is going to moot the case or be res judicata. So basically the Court is kicking you out of court. It's not just that. The Court is doing something that's going to make you. Right. And I want to distinguish between the two. On that one, there's nothing in this case that suggests that they've effectively been kicked out of court, other than their argument that it's too costly to litigate, correct? Correct. In other words, there's nothing in the judge's arbitration order that makes it clear that if they went through and arbitrated their claims that they wouldn't be able to come back and talk about enforcing the award and coming up to us on appeal and arguing unconscionably. Quite the contrary. The District Court said that, you know, contemplated them coming back after arbitration. And I apologize for using incorrect sort of language here, but had the District Court said, no, you may not proceed as a class, even in arbitration. I'm ruling first that you've given up all rights to proceed as a class. Now I'm sending it to arbitration. Would we have appellate jurisdiction? I don't think so, Your Honor, because I think that the District Court would have been in the error, I think, in passing on the issue. Of course it would have been an error. That's not the issue. That's the question. The question is whether could we remedy that error or would we have to wait until the end of the case to remedy it? Like in any other case, it could be remedied on appeal from final judgment. This could have been on final judgment a long time ago if they had paid $125 and gotten a judgment either way. Okay. I'm not clear to me why all of this time and expense was the preferred choice to doing that. Your Honor, thank you very much. Thanks. We'll give you one minute. Are you over your time, Mr. Woodruff? We'll give you a minute. Thank you very much. I appreciate it. Your Honor, three points. First on the statute, on 9 U.S.C. Section 16, Your Honor was asking questions about the meaning of A3, a final decision with respect to arbitration that is subject to this title. If you look at MEDEVAS, the language is the Federal Arbitration Act permits immediate appeal of a final decision with respect to arbitration. Then immediately after that, Your Honor, the court says, which is a decision that ends the litigation on the merits and leaves nothing more for the district court to do but execute the judgment, citing Green Tree. So what I believe MEDEVAS is saying is that 1291 certainly and the effect of the out-of-court concept is applicable. And the court goes on later to say that the finality of an order compelling arbitration is determined by the context in which it is issued. And I know Judge Silverman is going to nudge me when I do this, but I need to ask you a question about that. Yes. If 1291 is incorporated into A3, why didn't Congress mention it? Why didn't Congress mention it? In other words, didn't they mean to have a comprehensive statute dealing with arbitration? They took it out of the 1291 context. I think because it's exactly a freestanding independent basis for jurisdiction, Your Honor. So your argument is that 1291 still applies? Yes. It is my argument. Your Honor, I do want to get back to just very quickly on the important point on the record. There are several places, Your Honor. This is not a question of just $125 versus $250. If you look at the citation I gave you, Your Honor, in Sharon Arkin's declaration, she talks about the AAA requirement. Oh, page, I'm sorry, 265 of the record. She talks about the American Arbitration Association requiring fees of $3,350 and a final fee of $1,250. That's if it's nonmonetary relief. That's right. And each of these cases involved both claims for monetary relief and injunctive relief. So the nonmonetary relief, the injunctive relief in each of these cases would trigger the $4,600, which is far, far, far in excess of any individual claim. Johnson's claim is $103.60. The third point I wanted to make, Your Honor, very, very quickly, and that is the issue of whether vindication of statutory rights applies to the same law. You don't have to do that now. I understand you were making two different arguments. You were making the effective vindication argument, to which case it does not apply, and the effectively out-of-court argument, to which case it might apply. Oh, but I disagree with you, Your Honor, respectfully, despite that statement in Kilgore that you're referring to. And the reason is that — It's the son of Kilgore, actually, isn't it? Conniff. I'm sorry. You're referring to Conniff. The reason is that there are multiple cases that we cite in our briefing, Your Honor. So you just think Judge Clifton's wrong when he says that? Well, it was prior to Italian Colors as well, Your Honor. Besides Italian Colors? It's completely inconsistent with Italian Colors. Besides Italian Colors, so it can't be prior to. Were you talking about Conniff? I was talking about — no, it's the post-Kilgore case. Oh, I'm sorry. I apologize. It's Judge Clifton's opinion in the post-Kilgore case. His name escaped me for the moment. That says, Hurwitz, the issue you ducked in Kilgore we're now going to resolve for you. I see. And find that these agreements are enforceable. And he says the effective vindication doctrine we hold does not apply to State statutory claims. And we respectfully disagree, Your Honor, because there are cases showing that, you know, it certainly does apply to State claims. And as a matter of concept, it makes no sense to confine it only to Federal statutory claims. Thank you. Thank you very much, Your Honor. It's better. Thank you. The case has just started. You just submit.
judges: Kleinfeld, Silverman, Hurwitz